REQUESTED BY: Senator Loran Schmit Nebraska State Legislature Unicameral, State Capitol Lincoln, Nebraska 68509
Dear Senator Schmit:
In your letter of February 11, 1981, you advised us about certain amendments which were proposed with regard to the Nebraska Corn Resources Act, Neb.Rev.Stat. § 2-3601, et seq. (Cum.Supp. 1980). Specifically, you expressed a concern about an amendment to section 2-3622(10) of this act which would strike the words `or to influence legislation.'
You attached to your correspondence a letter you received from Mr. Richard Meuret of the Nebraska Corn Development, Utilization Marketing Board which letter generally advised you that the board was satisfied with its working relationship with the Nebraska Department of Agriculture, and further, did not `. . . want to see our legislation changed to jeopardize this relationship.'
In contemplating the proposed amendment, your question to us was whether such a letter was in violation of section2-3622(10).
The Nebraska Corn Resources Act does not specifically define the term `to influence legislation,' and, to our knowledge, that term is not defined in any other legislative provisions relating to grain check-off programs. Furthermore, our research did not disclose any Nebraska case law or pertinent legislative debate which provided specific guidance to interpreting this term.
General legal resource materials define the term `influence,' when used as a verb, as meaning `to affect, alter, move or sway.' 43 C.J.S., Influence at 708 (1978).
 The verb `influence' also means to procure from, or to put some external constraint upon; to use one's endeavors, although unable to carry his point. It has been held synonymous with `affect' . . . and has been compared with, or distinguished from, `induce' . . . and `procure.'
Id.
We also note that the entire prohibition set forth at section 2-3622(10) directs the members of the Corn Board:
 To prohibit any funds collected by the board from being expended directly or indirectly to promote or oppose any candidate for public office or to influence legislation. . .
Considering the entirety of this provision, in light of the standard legal definitions of the term `influence,' we would interpret this provision to prohibit such activities as using funds for the support of a candidate for public office, or, with regard to the prohibition of influencing legislation, using funds to employ a lobbyist for the Corn Board.
In further support of our opinion, we note that the term `lobbying' is generally defined as an activity to address or solicit members of a legislative body for the purpose of influencing their votes. 54 C.J.S., Lobby at 659 (1948). Therefore, it would appear to us that the Legislature was concerned about the Corn Board expending funds for lobbying activities in adopting the prohibitions set forth in section 2-3622(10).
Consequently, it does not appear to us that the correspondence attached to your letter of February 11, 1981, would constitute an activity or an expenditure of funds in contravention of section 2-3622(10). While it is difficult for us to ascertain the purpose of this correspondence, nothing on its face appears to represent a specific attempt to `influence legislation.' In our opinion, a court would not interpret the provisions of section 2-3622(10) so broadly as to prohibit the use of the funds of the Corn Board which are expended in correspondence to a senator dealing with the legitimate activities of that board.
Sincerely yours, PAUL L. DOUGLAS Attorney General Robert F. Bartle Assistant Attorney General